UNITED BEEF COMPANY *vs.* EDMUND S. CHILDS.

Suffolk.   February 8, 1940. — June 3, 1940.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Bills and Notes,* Accommodation.   *Evidence,* Extrinsic affecting writing. *Agency,* Ratification.

A debtor for about $7,500, who signed a note payable to his creditor for that sum under an agreement that, when he had reduced the amount due thereon to $5,000, he was to be relieved from further liability and who later, after he had so reduced the note, gave the payee at his request a new note for $5,000 to help his banking credit, could have been found to have been a maker of the $5,000 note for the accommodation of the payee under G. L. (Ter. Ed.) c. 107, § 52; no "value" in the terms of the statute was received by the maker for the $5,000 note, irrespective of whether the agreement as to the $7,500 note was legally enforceable.

Evidence of accommodation introduced to avoid liability of an accommodating party to a negotiable instrument absolute on its face is competent although it contradicts the instrument.

A corporation, by bringing an action against the maker of a note for $5,000 corresponding to an apparent unpaid balance of a previous note of $7,500, affirmed an entire transaction between its officers and the maker leading to the giving of the later note including an agreement that, when the first note was paid down to $5,000, there should be no further liability of the maker to it.

CONTRACT. Writ in the Superior Court dated July 20, 1938.

A verdict for the plaintiff in the sum of $5,975 was ordered by *Walsh*, J., who then reported the case to this court.

*L. Black*, (*J. A. Lyons* with him,) for the defendant.

*A. V. A. Thomason*, for the plaintiff. `

QUA, J. This is an action upon a promissory note for $5,000, dated November 8, 1935, made by the defendant, payable to the order of the plaintiff at the Webster and Atlas National Bank of Boston on January 21, 1936, and indorsed in blank. A second count upon an account annexed has been waived. The defendant contends that he gave this note for the accommodation of the plaintiff and therefore is not liable to the plaintiff upon it. *Leonard* v. *Woodward*, 305 Mass. 332, 334, and cases cited. The plaintiff not only denies that the note could be found to be an accommodation note, but further contends that the evidence of an oral understanding upon which the defendant relies contradicts the express terms of this and previous notes signed by the defendant and therefore violates the parol evidence rule.

The defendant himself testified to the following effect: The defendant had been in the "wholesale food business." In 1934 and 1935 the plaintiff was the defendant's largest creditor for "beef and products" purchased by the defendant. Early in 1935 the plaintiff's president and treasurer began pressing the defendant for payment. The defendant spoke of going into bankruptcy. They told the defendant that the plaintiff was opening a building in Omaha and needed the money. The plaintiff's treasurer said he had "borrowed up to the limit" at his own bank, but that the defendant had a credit standing at the Webster and Atlas. The plaintiff's officers urged the defendant to give the plaintiff a note for $7,500 payable at the Webster and Atlas National Bank and promised the defendant that if he paid all he owed to the plaintiff except $5,000 the plaintiff would make him a present of that sum and would never call upon him to pay it; that if the defendant paid $2,500 to the

bank on the note the plaintiff would pay the rest and take up the note, and the defendant would "never hear about it again." Thereupon, on March 6, 1935, the defendant gave the plaintiff a note for $7,500 payable at the Webster and Atlas National Bank and the plaintiff discounted it at the bank. At about the same time the defendant paid to the plaintiff a small balance in cash which, with the $7,500 note, made up the full amount of his indebtedness to the plaintiff. Between March and July, 1935, the defendant paid the bank $1,500, reducing the $7,500 note to $6,000. On July 9 a new note for $6,000, due November 8, was given by way of renewal, upon which the defendant paid $1,000, leaving the unpaid balance $5,000. Before the last mentioned note became due the plaintiff's president asked the defendant to renew it again, as the plaintiff was still needing money. The defendant objected and stated that he had fulfilled his part of the agreement and had "paid it down to $5,000" and saw no reason why he should sign again. The plaintiff's president replied that the defendant could get credit at this bank; that "We are borrowed up to the hilt"; and that "By signing this note it can't possibly hurt you and it can help us and relieve us." The defendant then, without any talk at the bank, signed the $5,000 note now in suit, payable January 21, 1936. The defendant heard nothing further about this note until January, 1938, when a treasurer of the plaintiff who had succeeded the former treasurer "walked into the plaintiff's [defendant's?] office."

The former treasurer of the plaintiff testified that the plaintiff had done business with the defendant for about seventeen years, and that the defendant's account was the plaintiff's largest account. He corroborated the defendant's testimony that before the making of the $7,500 note the plaintiff's president and treasurer agreed that if the plaintiff would pay all but $5,000 they "would give him a present of the account and call the bill square."

In answer to a question the jury found that when the defendant signed the $7,500 note there was an agreement between the plaintiff and the defendant that when the

defendant had reduced the note to $5,000 he was to be relieved from further liability.

It does not appear in the evidence how the plaintiff became the holder of the note in suit, after having discounted it, although the defendant in his answer says that the plaintiff paid it.

By G. L. (Ter. Ed.) c. 107, § 52 (negotiable instruments law, § 29), an accommodation party is defined as "one who has signed the instrument as maker, drawer, acceptor or endorser, without receiving value therefor, and for the purpose of lending his name to some other person." Upon the evidence hereinbefore narrated a finding would have been warranted that the defendant was an accommodation maker of the $5,000 note upon which this action is brought. The jury could have found that when that note was signed the defendant had paid down his indebtedness to $5,000 as agreed; that both the plaintiff and the defendant understood that as between them the plaintiff and not the defendant was to pay the remaining $5,000 to the bank; that the defendant signed merely to lend his name to the plaintiff in order that the plaintiff might get the advantage of the defendant's credit at the bank; and that the defendant did not receive "value therefor." They could find that as between these parties the note in suit was not a simple renewal of the former note with the usual implications of liability according to the tenor of the note, but that since the parties had mutually understood for some time before this note was given that no indebtedness longer existed between them, the transaction was intended as a pure accommodation of the plaintiff. *Salem Trust Co.* v. *Deery*, 289 Mass. 431, 435, 436. Doubtless the defendant would have been liable to the bank as a holder in due course of the note in suit, G. L. (Ter. Ed.) c. 107, § 52, but it does not necessarily follow that by the substitution of the last note for the preceding one the defendant received "value therefor" so that he could not be an accommodation party as to the plaintiff, even though the due date was extended thereby. Consideration consists only of that which the contracting parties offer and accept as such. *French* v.

*Boston National Bank*, 179 Mass. 404, 408.  *McGovern* v.
*New York*, 234 N. Y. 377, 388.  *Fire Ins. Association,
Ltd.* v. *Wickham*, 141 U. S. 564, 579.  *Banning Co.* v.
*California*, 240 U. S. 142, 153.  The jury could find that
when the $6,000 note had been reduced to $5,000 it had
become in substance as between the plaintiff and the de-
fendant a mere accommodation by which the defendant's
credit was extended to the plaintiff, and that by the under-
standing of the parties that relation continued when the
note in suit was given, as is commonly the case where an
accommodation note is renewed.  *Commonwealth Ins. Co.*
v. *Whitney*, 1 Met. 21, 23, 24.  *Hooker* v. *Hubbard*, 102
Mass. 239, 245.  *Quincy Trust Co.* v. *Woodbury*, 299 Mass.
565, 567–568.  *First National Bank of Morris* v. *Stephen*,
291 Ill. App. 373, 378, 379.  *Warner* v. *Fallon Coal Mines
Co.* 246 Mich. 493.  *Nebraska State Bank of Republican
City* v. *Walker*, 111 Neb. 203, 206.  *Taylor* v. *Nissen*, 58
S. D. 299, 302.  *King* v. *Doane*, 139 U. S. 166, 172, 173.
Daniel, Negotiable Instruments (7th ed.) §§ 194, 234.

Both parties have argued at length the question whether
the plaintiff's promise to accept what the defendant owed
in excess of $5,000 in full payment of his entire indebted-
ness was supported by sufficient consideration to render
it valid and enforceable.  In our view, for the reasons
already stated, the defendant might have been found to
come within the definition of an accommodation party as
to the final note whether or not the agreement was legally
enforceable.

The plaintiff's contention that the parol evidence rule
prevents the defendant from showing that he was not to be
liable to the plaintiff on the instrument sued upon cannot
prevail.  Evidence of accommodation introduced for the
purpose of avoiding liability of the accommodating party
always contradicts the instrument, but its competency is
unquestionable.  *Corlies* v. *Howe*, 11 Gray, 125.  *Levison*
v. *Lavalle*, 243 Mass. 47, 49.  *Great Barrington Savings Bank*
v. *Day*, 288 Mass. 181, 184.  *Salem Trust Co.* v. *Deery*, 289
Mass. 431, 436.  Brannan's Negotiable Instruments Law
(6th ed.) 433.  There is nothing to the contrary in such

cases as *Starks* v. *O'Hara,* 266 Mass. 310, and *Reardon* v. *Murdock,* 292 Mass. 362, 365. See *Wolff* v. *Perkins,* 254 Mass. 10, 13; *Quincy Trust Co.* v. *Woodbury,* 299 Mass. 565, 567.

To the plaintiff's remaining contention that its officers were not shown to have had authority to promise or to represent that it would remit part of the defendant's debt, the answer is that by bringing this action upon the final note the plaintiff has affirmed the entire transaction of which that note was the fruit. Am. Law Inst. Restatement: Agency, § 97; see also §§ 93 and 98. *New England Mutual Life Ins. Co.* v. *Wing,* 191 Mass. 192, 194. *Attorney General* v. *Onset Bay Grove Association,* 221 Mass. 342, 348, 349. *Gross* v. *Cohen,* 236 Mass. 468. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 68. *Coral Gables, Inc.* v. *Granara,* 285 Mass. 565, 571. *Quincy Trust Co.* v. *Woodbury,* 299 Mass. 565, 568, and cases cited.

A verdict should not have been directed for the plaintiff, and in accordance with the stipulation contained in the report there must be a new trial.

*So ordered.*